**ROBERT R. HENSSLER, JR.**
California Bar No. 216165
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
Telephone: (619) 234-8467
Email: Robert_Henssler

Attorneys for Mr. Quintana-Grijalva

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0403-LAB |
| | ) | |
| Plaintiff, | ) | Date: May 19, 2008 |
| | ) | Time: 9:00 a.m. |
| v. | ) | |
| | ) | STATEMENT OF FACTS AND |
| JESUS QUINTANA-GRIJALVA, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT |
| Defendant. | ) | OF DEFENDANT'S MOTIONS *IN LIMINE* |
| | ) | |

**I.**

**STATEMENT OF FACTS**

Mr. Quintana-Grijalva hereby incorporates his previously submitted statement of facts in this case.

**II.**

**A. THE COURT SHOULD PREVENT THE GOVERNMENT FROM PRESENTING FRAGMENTED PORTIONS OF MR. QUINTANA-GRIJALVA'S POST-ARREST STATEMENTS OUT OF CONTEXT**

Here, the prosecution may seek to introduce selected portions of Mr. Quintana-Grijalva's recorded statements. Under the Rule of Completeness and Federal Rule of Evidence 106, if the government seeks to introduce such fragmented testimony, the defense should be permitted to play additional portions of Mr. Quintana-Grijalva's statements to put into context the statements the government introduces. *See* Fed. R. Evid. 106; *United States v. Collicott*, 92 F.3d 973, 982 (9th Cir. 1996). Moreover, the defense should be permitted to do so at the time the government's videotape is played for the jury. The advisory committee

notes to Rule 106 specifically provide that: “[t]he rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to some point later in the trial.” Fed. R. Evid. 106, adv. comm. notes.

Notwithstanding Rule 807, Rule 106 actually provides grounds to admit these statements -- one would not need to rely upon Rule 106 if another independent hearsay exception existed. *United States v. Sutto*, 801 F.2d 1346, 1368-69 (D.C. Cir. 1986) (“Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence . . . . “). In *Phoenix Associates II v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995), that court recognized the difference between documents admitted as an exception to the hearsay rule and those admitted, absent an exception, pursuant to Rule 106. *Id*. (“Because Ambrosini testified that he prepared the work paper each year in the regular course of preparing appellants' financial statements, and it was the regular practice of appellants' business to make such documents, the work paper was admissible as a business record. . . . . Further, because Stone's counsel offered appellants' financial statements to establish that appellants themselves did not list a debt owed them by Stone among their assets, the work paper likewise should have been admitted for substantive purposes under Rule 106.”). This case was cited with approval in *Collicott*, 92 F.3d at 983. *See also United States v. Pendas-Martinez*, 845 F.2d 938, 944 & n. 10 (11th Cir.1988) ("[T]here are conflicting Circuit Court decisions on whether [ Rule 106] makes admissible parts of a document that otherwise would be inadmissible under the Rules of Evidence ....") (collecting cases); I Hon. Joseph M. McLaughlin, Hon. Jack B. Weinstein, & Margaret A. Berger, Weinstein's Fed. Evidence S 106.03[1], at 106-15 (2d ed.2001) (noting that language of Rule 106 is ambiguous as to "whether it authorizes the admission of otherwise inadmissible evidence").

Significantly, at the time of its drafting, the government attempted to include a clause in Rule 106 requiring admission of only otherwise admissible evidence but Congress failed to include such a provision. *See* 21 Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Practice & Procedure § 5071, at 337-40 (West 1977) (noting Congress' failure to take any action in response to the Justice Department's request that a clause be added to Rule 106 to require "that evidence adduced under the Rule be otherwise admissible").

Most importantly, if evidence was admissible pursuant to another hearsay exception, there would be no need to resort to Rule 106 for admissibility. Similarly, the fact that it would otherwise be characterized as “hearsay” does not preclude its admission if admitted under a different rule, here Rule 106.

*United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case"); *United States v. Sanchez-Robles,* 927 F.2d 1070, 1078 (9th Cir. 1991) (same).

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) does not compel a contrary result because all it provides is that Rule 106 "'does not compel admission of otherwise inadmissible hearsay evidence'" -- that is true Rule 106 only permits introduction of evidence "which ought in fairness to be considered contemporaneously" with other evidence. *See id*. Second, *Ortega* did not address the argument that Rule 106 would be unnecessary unless it was intended to admit otherwise inadmissible evidence, and finally, *Ortega* did not reverse the district court's evidentiary ruling precluding cross-examination regarding the defendant's exculpatory statements because Ortega "testified to the statements himself," so the government's presentation "did not distort the meaning of Ortega's statements . . . ." *Id*. at 683. If the Court does not permit introduction of any appropriate additional portions of the videotaped statement during the government's case, they should be admitted during the defense case. *See id*. However, as the advisory committee to Rule 106 noted, such delayed repair work is inadequate. *See* Fed. R. Evid. 106, adv. comm. notes.

In *United States v. Li*, 55 F.3d 325, 329-30 (11th Cir. 1995) (*citing United States v. Haddad,* 10 F.3d 1252, 1258 (7th Cir. 1993)), that court, in applying the Rule of Completeness, discussed traditional considerations in that context, including whether:

1. the entire statement explains evidence,
2. places the admitted evidence in context,
3. avoids misleading the jury, and
4. insures fair and impartial understanding of the evidence.

*Li*, 55 F.3d at 329-30. Here, these factors all favor admission of the entire statement. In other words, the jury is entitled to hear the proper context of any of Mr. Quintana-Grijalva's statements the government may use. *See also United States v. Castillo,* 14 F.3d 802, 806 (2nd Cir. 1986) (use of prior consistent statements "'is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent

//

//

statement. It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principles of completeness, though not a precise use of Rule 106) (quotation omitted).[1]

B. **<u>THE COURT SHOULD EXCLUDE MR. QUINTANA-GRIJALVA'S VIDEOTAPED STATEMENTS BECAUSE ITS ADMISSION VIOLATES THE CONFRONTATION CLAUSE AND INVADES THE PROVINCE OF THE JURY.</u>**

The government should be precluded from introducing the videotape which contains statements by Mr. Quintana-Grijalva, and at least two other individuals whose statements are not party-admissions and should be excluded under the Confrontation Clause of the Sixth Amendment, and other Ninth Circuit authorities. During the interrogation, the agents are accusatory, offer their opinions about what could happen or did happen, and repeatedly accuse Mr. Quintana-Grijalva of lying and contradicting himself. In short, in viewing the video, it is virtually impossible to parse Mr. Quintana-Grijalva's statements from those made by the agents.

The government has other means to introduce these statements. It could have someone testify to the statements, thus eliminating or at least minimizing the agents' commentary. They could also offer a transcript with offending portions redacted.[2]

In *Crawford v. Washington*, 541 U.S. 36, the Supreme Court overruled twenty-four years of precedent, holding that: "where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required, unavailability and a prior opportunity for cross-examination." 541 U.S. at 68, 124 S. Ct. at 1374. Prior to *Crawford*, "hearsay-type" evidence was admissible if it fell within a "firmly-rooted" hearsay exception or bore particularized guarantees of reliability. *See id.; see also Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531 (1980).

---

[1]In this case, the government has not provided the defense with a translated transcription of Mr. Quintana-Grijalva's statement, which is in Spanish. Given this lack of notice, it seems the government is not planning to try to introduce the any portions of his statements.

[2] While it is true that the videotape could be redacted to eliminate all references to the lies, the contradictions, the accusatory statements and other lengthy diatribes which contain multiple levels of hearsay, that only Mr. Quintana-Grijalva and not his accusers are shown implicates principles guaranteeing a defendant a "face-to-face meeting with witnesses appearing before the trier of fact." *See Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). The government agents at the interrogation of Mr. Quintana-Grijalva are "witnesses" under *Crawford v. Washington*, 541 U.S. 36, 52 (2004) ("witnesses" "bear testimony" and "statements taken by police officers in the course of interrogations are also testimonial . . . ."). In addition, *Crawford* states that the absence of an oath was not dispositive. 541 U.S. at 52.

The new mode of analysis casts aside the prior hearsay exceptions for purposes of the Confrontation Clause inquiry. Whether or not a statement falls within a hearsay exception is no longer relevant because the new test is whether evidence sought to be introduced is or is not "testimonial." *Id.* at 61, 124 S. Ct. at 1363 ("Where testimonial statements are involved, we do not think the framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence . . . ."); *see also id.* at 69, 124 S. Ct. at 1374 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation").[3]

*Crawford* definitively required confrontation in order to admit "testimonial" statements into evidence and it broadly defined such "[t]estimony," in turn, [a]s typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51, 124 S. Ct. at 1364 (quoting N. Webster, An American Dictionary of the English Language (1828)). The Supreme Court did not set forth exhaustively the categories of "testimonial evidence." *Id.* at 68, 124 S. Ct. at 1374("[w]e leave for another day any effort to spell out a comprehensive definition of "testimonial"). Rather, in addition to the broad common-sense definition, it gave some examples, noting that, at a minimum, it applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68, 124 S. Ct. at 1374. The Court further states that: "*ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony, confession or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" were testimonial. *Id.*

*Crawford* itself addressed a statement that was obtained via police interrogation of the defendant's wife, and subsequently was admitted into evidence absent cross-examination. 541 U.S. at 52, 124 S. Ct. at 1364. The Court noted that whether or not a statement was "testimonial" was informed by the involvement of government officials in the production of the statement:

//

//

[3] Of course, the hearsay exceptions remain relevant if no Confrontation Clause analysis is required, i.e., in civil cases.

> Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse--a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

541 U.S. at 56, 124 S. Ct. at 1367; *see also id*. at 53, 124 S. Ct. at 1365. "[I]nterrogations by law enforcement officers fall squarely within [the class of testimonial hearsay]. While everyone assumes that the individual who is interrogated provides a statement which is "testimonial," there is no statement in *Crawford* indicating that the interrogators statements do not so qualify. *See generally id*. In fact, since *Crawford*'s main concern was with government involvement in production of testimony -- particularly in interrogations -- it would seem that should include the government officials' statements during the interrogation as well. *See id*. at 53-56; 124 S. Ct. at 1363-1365.

In fact, post-*Crawford*, several courts have not allowed the government to rely upon the rationale that certain statements were not offered for the truth or were only offered show context or the effect on the listener because "[u]nder the prosecution's theory, every time a person says to the police 'X committed the crime,' the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers." *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) (reversing where district court admitted officer's testimony about confidential informant's statements even though government offered evidence not for the truth but to show why certain actions were taken). In *United States v. Nielsen*, 371 F.3d 574 (9th Cir. 2004), the Court reversed a conviction where the trial court admitted government agent's testimony about the statements of the defendant's girlfriend – made in response to police questioning – although the government claimed they were offered not for their truth but to show why the agents took the actions they did.[4] Also, in *United States v. Cromer*, 389 F.3d 662, 674 (6th Cir. 2004), that court did not allow admission of testimony from officer's about confidential informants' statements about and descriptions of the defendant and his nickname "Nut" because it "explicitly, albeit not directly, informed the jury that someone had implicated Nut in illegal activity." *Id*. In *Cromer*, the government urged the

---

[4] The *Nielsen* court also intimated that it did not believe this was the government's true purpose in admitting these statements. *See* 371 F.3d at 582, n.1 (calling this a "post-hoc rationalization").

admissibility of these statements as not offered for their truth and there was no objection to their admission. *Id*. Nevertheless, the court reversed finding a confrontation clause violation. *Id*.[5]

While *Crawford*, in parentheses in a footnote, provides: "(The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted)," *see* 541 U.S.. at 59, n.9, this was clearly dicta, and in so noting *Crawford* cites *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). In *Tennessee v. Street*, 471 U.S. at 414, the Court allowed admission in rebuttal of a co-defendant's confession where the defendant testified that he came up with the account of events he told the police because they read to him the co-defendant's confession. *See id*. The government was allowed to impeach his testimony by providing the confession which was entirely different from the version of events given by the defendant. This suggests a more limited principle of admissibility than that attempted by the government in its case-in-chief in this case.

Allowing exclusion of statements from the categorical rule of the Confrontation Clause simply because they may be admitted to show "context," "effect on the listener" or to provide the "ebb and flow" of the conversation indeed "eviscerates" the Confrontation Clause, *see Silva*, 380 F.3d at 1020 and violates *Crawford's* goal in replacing court-created exceptions with categorical constitutional guarantees. *See Crawford*, 541 U.S. at 67-68 ("By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to their design. Vague standards are manipulable, and, while that might be a small concern in run-of-the-mill assault prosecutions like this one, the Framers had an eye toward politically charged cases . . .where the impartiality of even those at the highest levels of the judiciary might not be so clear.").

---

[5] There is a circuit split on this issue. At least two circuits have allowed the "evisceration" of the right to confront and cross-examine one's accusers by permitting prejudicial out-of-court statements to be admitted under the guise of providing "context," explaining the investigatory steps pursued by the agents, the effect on the listener, demeanor or some other non-element. *See, e.g., United States v. Hansen*, 434 F.3d 92, 100 (1st Cir. 2006) (statements offered to provide context are not testimonial); *United States v. Walter*, 434 F.3d 30, 35 (1st Cir. 2006) (allowing admission of co-defendant's statement to provide context**)**; *United States v. Jimenez*, 419 F.3d 34 (1st Cir. 2005) (finding admission of third party statements not error because they were admitted to provide context to the defendant statements and the investigatory steps pursued by the agents); *United States v. Hendricks*, 395 F.3d 184, 184 (3d. Cir. 2005) (allowing admission of statements by confidential informant to put the statements of the other parties to the conversation into perspective) while as set forth above, the Ninth, Sixth and Seventh Circuit have set constitutional limitations on their admission.

Notwithstanding the Confrontation Clause claims, at a minimum, every portion of the statement where government agents accuse Mr. Quintana-Grijalva of lying, contradicting himself or otherwise suggest he is untruthful must be excluded. The Ninth Circuit authorities are extremely well-established that credibility is solely and exclusively within the province of the jury and that no witness should be permitted to testify that another witness is lying. *See, e.g., United States v. Geston*, 299 F3d 1130, 1136 (9th Cir.2002); *United States v. Sanchez*, 176 F.3d 1214, 1220 (9th Cir. 1999); *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998). \

**III.**

**CONCLUSION**

For the foregoing reasons, Mr. Quintana-Grijalva respectfully requests that this Court grant these motions *in limine*, as well as those previously filed for trial.

Respectfully submitted,

DATED: May 5, 2008

*/s/ Robert R. Henssler*
ROBERT R. HENSSLER JR
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Quintana-Grijalva

CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of information and belief, and that a copy of the foregoing document has been caused to be served this day upon:

Courtesy copy Court

Copy Andrew Schopler via NEF/ECF

Courtesy Copy Defendant

Dated: May 5, 2008

/s/ *Robert R. Henssler, Jr.*

ROBERT R. HENSSLER, JR.
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
e-mail: Robert_Henssler@fd.org