KAREN P. HEWITT
United States Attorney
ANDREW G. SCHOPLER
Assistant U.S. Attorney
California State Bar No. 236585
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5836
Facsimile No.: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS QUINTANA-GRIJALVA,<br><br>Defendant. | Criminal Case No. 08CR0403-LAB<br><br>Date: May 19, 2008<br>Time: 2:00 p.m.<br><br>UNITED STATES' MOTIONS IN LIMINE TO **ADMIT**:<br>(1) RETAIL VALUE<br>(2) REBUTTAL STRUCTURE / MODUS OPERANDI EVIDENCE<br>(3) NERVOUSNESS TESTIMONY<br>(4) CONTRABAND (BULK DRUGS)<br>(5) PRIOR CROSSINGS EVIDENCE<br>(6) PHOTOS IN OPENING STATEMENT<br><br>AND MOTIONS IN LIMINE TO **EXCLUDE**:<br>(7) WITNESSES<br>(8) PUNISHMENT/AGE/EDUCATION<br>(9) SELF-SERVING HEARSAY<br>(10) DURESS/NECESSITY<br>(11) DEFENSE EXPERTS<br>(12) LACK OF CRIM. HIST./GOOD ACTS<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and ANDREW G. SCHOPLER, Assistant U.S. Attorney, and hereby files its motions in limine, which are based upon the files and records of this case.

//

## I

## INTRODUCTION

Defendant Jesus Quintana-Grijalva ("Defendant") stands charged with importing 39.06 kilograms of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and possessing with intent to distribute 39.06 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1).

## II

## STATEMENT OF FACTS

On Monday, January 21, 2008, at about 9:02 p.m., Defendant entered the Calexico West Port of Entry in primary vehicle lane 4 as the driver and sole occupant of a white 1999 Dodge Ram pickup truck, bearing California license plate number 6B11785 and VIN 1B7HF16Y3XS307097. The owner of the vehicle is Taller Hernandez (Dealer# B00430) of 1797 Calle 2da, Ensenada, Baja California, Mexico, who purchased the vehicle on November 30, 2007 and received it on December 24, 2007.

### A. PRIMARY INSPECTION: Nervousness and Suspicious Behavior

At primary inspection, Defendant handed Customs and Border Protection Officer ("CBPO") Jesus Esparza his Permanent Resident Card. CBPO Esparza noticed that Defendant's hand was shaking unusually. CBPO Esparza asked Defendant for the purpose of his visit to Mexico, and Defendant replied to go eat tacos. CBPO Esparza asked where he was going, and Defendant said he was going home to Calexico. Defendant said that the vehicle belonged to a friend, who had loaned it to him, because he damaged his foot about four months ago at work. In addition to Defendant's shaking hands, CBPO Esparza noticed that Defendant was unusually talkative.

CBPO Esparza asked Defendant to open the tool box in the back of the pickup truck. As Defendant got out of the vehicle, he appeared to be limping (which was consistent with his story about an injured foot). However, after Defendant opened the tool box, he got back into the truck with apparent ease, as though he were not injured at all. Given all of this suspicious behavior, CBPO Esparza referred the truck for secondary inspection at about 9:05 p.m.

**B. <u>SECONDARY INSPECTION: 39 kg of Marijuana in Gas Tank & Spare Tire</u>**

At secondary inspection, CBPO Ramon Garcia briefly interviewed Defendant, who gave a negative Customs declaration. CBPO Garcia asked who the owner of the vehicle was, and Defendant said that the vehicle belonged to his friend who lives in Mexicali and that he borrowed it to go to San Diego to see the doctor, because he had an injured leg. Canine Enforcement Officer ("CEO") E. Leon's human/narcotic detector dog ("HNDD") then alerted to the vehicle's gas tank, which tapped solid, and Defendant was escorted to the vehicle secondary office.

With the help of a contractor, agents removed the truck's gas tank and observed an access area on the top front of it. The agents removed the access area and found 22 packages of marijuana wrapped in clear cellophane tape, brown postal tape and vacuum-sealed packing. A few minutes later, at 9:45 p.m., the agents placed Defendant under arrest for the importation of marijuana.

During a continuing inspection of the Dodge Ram pickup truck, the agents discovered inside the spare tire 15 packages of marijuana, also wrapped in clear cellophane tape. The total weight of all 37 packages of marijuana was 39.06 kilograms.



Gas Tank



Spare Tire



### C. MIRANDIZED, VIDEOTAPED POST-ARREST STATEMENT

On Tuesday, January 22, 2008, at about 12:51 a.m. (3 hours after his arrest), Special Agent ("SA") Enrique Torregrosa and SA Rafael Silva conducted a videotaped interview with Defendant. After reading Defendant his Miranda rights, Defendant signed a waiver form at 12:55 a.m. and agreed to speak to the agents without the presence of an attorney.

Defendant stated that on Friday, January 18, 2008, he was supposed to get a ride from Clinicas de Salud Del Pueblo to San Diego, California, to see a doctor about his knee.[1] He stated that he missed his ride, so he asked his life-long friend "Nito" if he could borrow a vehicle to go to San Diego to see the doctor. (Defendant did not know the real name of his life-long friend "Nito.") Defendant said that "Nito" gave him a 1999 Dodge Ram truck and crossed the Port of Entry ("POE") at about 8:00 p.m. (The vehicle in fact crossed through the Calexico West POE at 8:59 p.m.) Defendant stated that he went to his sister-in-law Rita Quintana's house at 930 Lee Street in Calexico, California, to get some clothes and then drove back to Mexicali. Defendant stated that he gave the truck back to "Nito" and went back to his house.

SA Torregrosa asked Defendant why he gave the truck back to "Nito" if he was supposed to go to the doctor. Defendant claimed that he had gone to his friend Evilio's house to ask for some money for gas, but that Evelio could not lend him money.

According to Defendant, "Nito" gave him the Dodge Ram pickup truck again on January 21, 2008 at about 7:00 p.m., so that Defendant could go see the doctor. Defendant said that he was on his way to San Diego at 9:05 p.m. to San Diego to have surgery on his knee when he was stopped at the POE.

Defendant said that "Nito" told Defendant to take the vehicle to San Diego to see the doctor and then when he returned to the Valley, to park the truck at AA Parking. SA Torregrosa asked Defendant how he planned to put enough gas in the truck, if he had no money. Defendant stated that he was going to Rita's house to ask her for money.

---

[1] There were in fact medical documents indicating Defendant had been seen for a knee problem.

Defendant said that he did not know about the marijuana, and that his friend "Nito" probably did not know either.

**III**

**POINTS AND AUTHORITIES**

**A. EXPERT TESTIMONY ON RETAIL VALUE SHOULD BE ADMITTED**

The United States has given notice that its value expert will testify regarding the retail or "street" value and the wholesale value of the seized narcotics, as well as the fact that it was a distributable amount of narcotics. Such testimony is admissible under Ninth Circuit precedent.

**(a) Retail ("Street") and Wholesale Value**

In United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994), the defendant was charged with importation of heroin. At trial, the United States introduced expert testimony regarding the street value of the heroin, assuming the drugs had been repeatedly cut and sold on the street. The Ninth Circuit held that admission of such testimony was proper and that counsel can argue reasonable inferences from the evidence. Id. at 812; see also United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity and quality of narcotics is relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them); United States v. Kearney, 560 F.2d 1358, 1369 (9th Cir. 1977) (street value of narcotics relevant to demonstrate defendant's knowledge).

The testimony of the United States' expert regarding the value of the seized narcotics is circumstantial evidence of Defendant's knowledge and intent regarding the contraband hidden in the vehicle that Defendant drove into the Port of Entry. Knowledge and intent are essential elements of the offenses charged. Thus, the Court should admit the testimony.

**(b) Distributable versus Personal Use Amount**

The United States intends to elicit expert testimony to establish that the quantity of narcotics found in the vehicle driven by Defendant is a distributable, rather than a personal use amount. See United States v. Tavakkoly, 238 F.3d 1062, 1067 (9th Cir. 2001) (undisputed expert testimony that 1.35 kg of opium was inconsistent with possession for personal use was relevant

to prove defendant's intent to distribute); United States v. Alatorre, 222 F.3d 1098, 1104-1105 (9th Cir. 2000) (expert testimony properly admitted to establish that quantity of marijuana was distributable amount, rather than just personal use amount).

Once again, the Ninth Circuit clearly allows the United States to introduce evidence that the amount of narcotics seized was a distributable amount. Therefore, the Court should properly allow testimony about the quantity of narcotics as evidence not ordinarily within the province of a jury.

**B. STRUCTURE AND/OR MODUS OPERANDI TESTIMONY SHOULD BE ALLOWED IN REBUTTAL**

The United States does not intend to present "structure" evidence or evidence regarding drug courier modus operandi in its case-in-chief. However, should the Defendant open the door to the admission of such evidence, the United States reserves the right to present and argue such evidence.

For example, if during cross-examination of a Government witness, the Defendant's counsel attempts to impugn the thoroughness of the investigation based on the lack of fingerprinting of the packages found in Defendant's car, the United States should be permitted to bring in limited "structure" evidence on redirect or via the United States' expert witness. See United States v. McGowan, 274 F.3d 1251, 1254 (9th Cir. 2001) (noting that limited structure evidence is permissible if defendant "opens the door" based on cross examination regarding fingerprints); United States v. Beltran-Rios, 878 F.2d 1208 (9th Cir. 1989).

**C. EVIDENCE OF NERVOUSNESS IS ADMISSIBLE**

A witness may testify that a defendant appeared nervous. The Ninth Circuit has pointed out that "[w]hile the older view might preclude witnesses from giving their 'opinion' on whether a particular person appeared nervous or intoxicated, under the modern, and probably majority, view a lay witness may state his opinion that a person appeared nervous or intoxicated." United States v. Mastberg, 503 F.2d 465, 470 (9th Cir. 1974). The Ninth Circuit follows the modern view. For example, in Mastberg a Customs inspector testified in a heroin-importation case that the defendant appeared "nervous," although the inspector could not "pinpoint the specific fact which

led him to believe that [the defendant] was nervous." Id. The defendant argued that since the Customs inspector could not remember the underlying facts that led to the conclusion of nervousness (and since the inspector admitted it was a "subjective evaluation"), the statement that the defendant was "nervous" was pure opinion testimony and should be excluded. The Ninth Circuit disagreed. The Court noted that the defense was free to cross-examine the inspector on the lack of "underlying facts," but that the inspector's "testimony on nervousness was admissible. The trier of fact must weigh the accuracy of the testimony of the customs inspector and judge its credibility." Id.

Thus, the evidence of nervousness in this case (which also includes the inspector's memory of Defendant's shaky hands and overly talkative answers) is admissible.

### D. THE GOVERNMENT SHOULD BE ALLOWED TO DISPLAY CONTRABAND

The Government should be allowed to introduce the seized narcotics as evidence and display that evidence to the jury. Seized narcotics, whether in packages or in bulk, are admissible as exhibits at trial and may be displayed to the jury. United States v. Ramos Rodriguez, 926 F.2d 418, 420-21 (5th Cir. 1991). In Ramos Rodriguez, the defendant objected on the first day of trial to the Government displaying two packages of marijuana to the jury, and then objected on the second day of trial to the Government displaying 227 pounds of marijuana to the jury. The Fifth Circuit found that both objections were properly overruled, because the evidence was admissible and did not violate the defendant's right to a fair trial. Id. at 420-21. The Ramos Rodriguez court specifically found that the defendant's reliance on Federal Rule of Evidence 403 was misplaced, holding, "Rule 403, without question, is to authorize the exclusion of inflammatory or prejudicial evidence. Ramos does not argue, however, that the marijuana should have been excluded; rather, he argues that the jury should not have been allowed to see the narcotic throughout the trial. This Court can find no error under Rule 403." Id. at 421 (emphasis in original).

Like the defendant in Ramos Rodriguez, Defendant does not argue the seized narcotics here are inadmissible under Rule 403, only that they should not be displayed to the jury. Rule 403 does not allow for this, and the jury is entitled to view all of the evidence properly received by the

Court. Therefore, Defendant's motion to exclude the contraband from the courtroom should be denied.

**E. PRIOR CROSSINGS EVIDENCE SHOULD BE ADMITTED**

The United States does not intend to introduce evidence of any of Defendant's criminal convictions, pursuant to Federal Rule of Evidence 404(b) or 609. However, if Defendant testifies or if the United States introduces evidence concerning his post-arrest statement, the Court should admit evidence concerning Defendant's prior international border crossings in the days leading up to his arrest, because they are inextricably intertwined with his statements regarding the offense. As such, the United States does not consider this evidence to be subject to Federal Rule of Evidence 404(b). Nevertheless, in the event the Court feels this evidence does qualify as Rule 404(b) evidence, the United States gives notice that it intends to introduce Defendant's prior crossings for the purposes of proving intent, preparation, plan and knowledge.

**F. MOTION TO USE PHOTOS IN OPENING STATEMENT**

The United States moves for an order allowing it to display to the jury during the opening statement the photographs shown in the Statement of Facts above, as well as an aerial photograph of the POE. The United States has a good faith basis to believe that it will establish a foundation for all of these exhibits during the trial, and that they are relevant and not unfairly prejudicial.

**G. MOTION TO EXCLUDE WITNESSES**

The Government moves to exclude all witnesses from the courtroom during trial, with the exception of the Government's case agent. Both counsel should be entitled to be aided at counsel table by someone thoroughly versed in the facts of the case. Defense counsel will be able to consult with Defendant in this regard, and therefore the Government should be afforded the same ability to consult with someone familiar with the facts of the case.

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation

forward to this point and is considered by the United States to be essential to the presentation. Thus, the case agent's presence at trial is necessary to the United States.

**H. THE COURT SHOULD PRECLUDE REFERENCE TO DEFENDANT'S AGE, EDUCATION OR POTENTIAL PUNISHMENT**

The Government moves to preclude reference to Defendant's age, education or any potential punishment in this case, as such facts are irrelevant to the elements of the indicted crimes. "Evidence which is not relevant is not admissible." FED. R. EVID. 402. The sole reason to introduce these facts would be to elicit sympathy from the jury in a manner that would prejudice the Government. Such purposes are improper under the Rules of Evidence for multiple reasons. First, Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Since the sole purpose of this irrelevant evidence would be to prejudice the jury against the Government, the Rule 403 bar applies. Furthermore, the Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition). Any introduction of this evidence would be in direct contradiction with the proper instructions that the jury should receive.

Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). Any mention of penalty or felony status is irrelevant as it sheds no light on the Defendant's guilt or innocence. Moreover, the Government moves to preclude the defense from referencing Defendant's "liberty" in a manner designed to circumvent this prohibition. For example, the defense should be precluded from arguing that the Government "asks you to take Defendant's liberty away and put him in jail."

**I. SELF-SERVING HEARSAY IS INADMISSIBLE**

The Defendant's out-of-court statements are inadmissible hearsay when offered by the Defendant through witnesses. The Defendant cannot rely on Fed. R. Evid. 801(d)(2) because Defendant is not the proponent of the evidence, and the evidence is not being offered against Defendant. Defendant cannot attempt to have "self-serving hearsay" brought before the jury

without the benefit of cross-examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

In United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000), the Ninth Circuit clearly noted that attempting to elicit a defendant's exculpatory statements from a Government witness during cross-examination would put before the jury the defendant's exculpatory statements without subjecting the defendant to cross examination, and that is what the hearsay rule is designed to prevent. Id. (citing United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988)). Accordingly, Defendant's attempt to elicit exculpatory statements during cross-examination of the Government's case agent or any other witness other than Defendant himself should be denied.

**(1) Self-Serving Hearsay Is Not a Prior Consistent Statement**

Further, Defendant cannot assert that the statements Defendant made to agents are prior consistent statements and therefore not hearsay under Federal Rule of Evidence 801(d)(1)(B). A prior consistent statement must be made prior to the impetus to lie. Here the motive to lie clearly existed while Defendant was at the Port of Entry with contraband hidden in the load vehicle. Since Defendant's motive to fabricate or lie is not recent, cross-examination to which Defendant may be subject does not give rise to an express or implied charge of recent fabrication or motive to lie. See United States v. Bao, 189 F.3d 860, 864 (9th Cir. 1999) (concluding that prior statement made when defendant/declarant was aware of police investigation was not admissible under 801(d)(1)(B)); United States v. Collicott, 92 F.3d 973, 979 (9th Cir. 1996) (noting that declarant's motive to lie arose when she was stopped by police with drugs in car); United States v. Miller, 874 F.2d 1255, 1274 (9th Cir. 1989) (holding that declarant had motive to fabricate exculpatory statements because she knew she was under criminal investigation).

Any statements by Defendant at the Port of Entry fail to satisfy the temporal requirement with respect to the recent motive to lie or fabricate. See Tome v. United States, 513 U.S. 150, 156 (1995) (specifically discussing the limits of Rule 801(d)(1)(B)). Since prior consistent statements of a witness "may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited," the United States asks that the Court issue an order

forbidding Defendant's use of this evidentiary tactic. Id. at 157-58 ("The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told.").

### J. THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY

The Government moves to preclude the introduction of any evidence concerning duress, coercion or necessity as a reason for committing this offense. Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996) (same). Similarly, a district court may preclude a necessity defense where"the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that she was faced with a choice of evils and chose the lesser evil;

(2) that she acted to prevent imminent harm;

(3) that she reasonably anticipated a causal relationship between her conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**K. THE COURT SHOULD PRECLUDE DEFENSE EXPERT TESTIMONY**

The Government moves to preclude Defendant from offering any expert testimony. Pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b), the United States requested that Defendant permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in Defendant's case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, the United States requested that Defendant disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries were to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no

showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

**L. THIS COURT SHOULD PRECLUDE EVIDENCE OF PRIOR GOOD ACTS, SUCH AS LACK OF A CRIMINAL HISTORY**

Defense counsel should be prohibited from arguing or eliciting testimony or evidence concerning Defendant's prior good conduct, including his lack of a prior criminal record. "Evidence of good conduct is not admissible to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991). Under Rule 404(b), evidence of other acts, including other "good" acts (or the mere absence of prior "bad" acts), are "not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Furthermore, even when character evidence is admissible, evidence of specific instances of conduct is not admissible unless "character or a trait of character of a person is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b); see also Michelson v. United States, 335 U.S. 469, 477 (1948) ("The witness may not testify about defendant's specific acts or courses of [good] conduct or his possession of a particular disposition or of benign mental and moral traits.").

In particular, testimony concerning Defendant's lack of a criminal record is inadmissible, unless such character evidence is an essential element of the charge or defense. See, e.g., United States v. Thomas, 134 F.3d 975, 979-80 (9th Cir. 1998) (testimony concerning defendant's lack of a prior criminal record admissible where defendant raises an entrapment defense, because defendant's character "is an 'essential element' of the defense" of entrapment; specifically, the prosecution must prove beyond a reasonable doubt that defendant was predisposed to commit the crime).

Thus, the defense should be precluded from presenting evidence of Defendant's lack of a criminal record or any other specific instances of good conduct.

//

//

//

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests that the Court grant the United States' motions in limine.

DATED: May 12, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Andrew G. Schopler
ANDREW G. SCHOPLER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JESUS QUINTANA-GRIJALVA,<br>Defendant. | ) | Criminal Case No. 08CR0403-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, ANDREW G. SCHOPLER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' MOTIONS <u>IN LIMINE</u>** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Robert R. Henssler, Jr.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008

/s/ *Andrew G. Schopler*
ANDREW G. SCHOPLER
Assistant United States Attorney